IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Genaro Evenicio Pina-Aguirre,<br><br>        Petitioner,<br><br>v.<br><br>Charles L. Ryan, Arizona Attorney General,<br><br>        Respondents. | No. CV 14-00860 PHX NVW (MEA)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE NEIL V. WAKE:**

Petitioner docketed a petition seeking a petition for writ of habeas corpus on April 23, 2014. Respondents docketed an answer (Doc. 18) to the habeas petition on September 8, 2014. Petitioner docketed a reply to the answer to his petition on October 17, 2014. See Doc. 19.

**I Procedural background**

A Maricopa County grand jury indictment returned December 13, 2006, charged Petitioner with one count of armed robbery, a class 2 dangerous felony (Count 1), one count of theft of a means of transportation, a class 3 felony (Count 2), and one count of misconduct involving weapons, a class 4 dangerous felony (Count 3). See Doc. 18, Exh. A. On January 23, 2007, the state filed allegations of historical priors and also alleged aggravating circumstances other than prior convictions. Id., Exh. B & Exh. C. On January 29, 2007, the state trial court appointed a Spanish-language interpreter to assist

Petitioner in his criminal proceedings. Id., Exh. D.

Petitioner refused to cooperate with his assigned counsel, and on June 1, 2007, the trial court assigned new counsel. Id., Exh. E & Exh. F. On February 19, 2008, Petitioner's new counsel moved for a determination of competency to stand trial pursuant to Rule 11, Arizona Rules of Criminal Procedure. Id., Exh. G. Counsel reported that Petitioner claimed "he hears voices around the clock and has suicidal thoughts." Counsel further averred he had "questions about [Petitioner's] ability to understand him and assist in his defense." Id., Exh. G at 1-2.

On February 26, 2008, the trial court ordered a Rule 11 evaluation and, on March 4, 2008, the trial court appointed two mental health physicians to conduct an evaluation. Id., Exh. H & Exh. I. The parties stipulated that the court could determine competency based on the report of one of the appointed doctors. On April 4, 2008, the trial court found Petitioner incompetent and ordered that he be committed and receive treatment to be restored to competency. Id., Exh. J & Exh. K at 2.

On May 20, 2008, upon stipulation of the parties, the trial court found that Petitioner had been restored to competency. Id., Exh. L & Exh. M. On September 10, 2008, and again on January 28, 2009, Petitioner expressed dissatisfaction with his counsel, however, the trial court denied his requests to change counsel on both occasions. Id., Exhs N, O, P.

Petitioner's trial began on July 28, 2009, resulting in guilty verdicts on all three charges. Id., Exhs TT, UU, VV, WW.

The Arizona Court of Appeals summarized the facts adduced at Petitioner's trial as follows:

> Late on December 4, 2006, the victim parked her car in her driveway. As she got out, Pina-Aguirre pointed a handgun at her and demanded the keys. After she relinquished her keys and purse, Pina-Aguirre got into her car and drove away. The victim called police and activated her "LoJack" GPS tracking device.
> The car was quickly located in front of of a house. As police approached, Pina-Aguirre fled out the back door. He was captured in a nearby backyard and was subsequently identified by the victim.

Answer at 3-4, quoting Exh. BB at 2.

On September 2, 2009, the state court sentenced Petitioner to the presumptive sentence of 15.75 years of imprisonment pursuant to his conviction for armed robbery, to the presumptive sentence of 11.25 years of imprisonment pursuant to his conviction for theft of a means of transportation, and to the presumptive term of 10 years of imprisonment pursuant to his conviction for misconduct involving weapon, all sentences were ordered to be served concurrently. Id., Exh. U at 2-3.

Petitioner took a timely, counseled direct appeal of his convictions and sentences. Id., Exh. W. Petitioner, through counsel, asserted the trial court erred by failing to sua sponte conduct a hearing to determine the voluntariness of Petitioner's post-arrest statements to police. Id., Exh. Y. On January 20, 2011, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. Id., Exh. BB. Petitioner did not seek review of this decision by the Arizona Supreme Court.

On March 30, 2011, Petitioner initiated a timely action for state post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. Id., Exh. DD. On April 4, 2011, the trial court appointed counsel to represent Petitioner in his Rule 32 proceedings. On October 27, 2011, counsel filed a notice averring to the court that they could find no "meritorious issue, including a claim of ineffective assistance of counsel, to justify the filing of a petition in this matter." Id., Exh. EE & Exh. FF. On December 15, 2011, Petitioner filed a pro per pleading in his Rule 32 action, checking the following boxes on the standard form as grounds for relief: 1) admission at trial of an unconstitutional identification; 2) ineffective assistance of counsel; 3) unconstitutional suppression of evidence by the state; 4) unconstitutional use by the state of perjured testimony; 5) newly discovered evidence (video and audio recording of his interview with police); 6) denial of his "right" to test for DNA and fingerprint evidence; and 7) denial of "right to change my lawyer." Id., Exh. HH at 1-2. The trial court construed the issues as asserting claims of newly discovered evidence, ineffective assistance of trial counsel, and a faulty police investigation. Id., Exh. LL at 3, 4, 7.

1    On April 6, 2012, the trial court dismissed Petitioner's Rule 32 action. The trial
2 court (the same judge before whom the case was tried) recounted the facts of Petitioner's
3 case as follows:

> At approximately 11:30 p.m. on December 4, 2006, the victim, upon arriving home from work, got out of her car and walked to her front door. As she did so she saw a car by her house. According to the victim, Defendant jumped the fence, came into her front yard, ran up to her, pointed a gun at her face and demanded her car keys. The victim relinquished to Defendant her car keys, purse and a video camera she was holding. Defendant then got into the victim's car and drove away. The other car that the victim had noticed followed behind. The victim then called the police and activated the "LoJack" GPS tracking device in her car.
> The victim's car was quickly located by the police in front of a house. As police began setting up a perimeter around the house, Defendant and at least one other man ran out of the house's back door. Defendant was captured in a nearby backyard. At the time he was captured Defendant had on [sic] his possession a speed loader with 45 caliber ammunition. Defendant was subsequently identified by the victim in a one-on-one identification. Defendant was then taken to the police station, read his Miranda rights and questioned by police.
> Inside the house that Defendant fled from, the police found a silver 45 caliber handgun and a black leather jacket (according to the victim, the Defendant was wearing a black leather jacket when he accosted her). The police also found the victim's cell phone, name tag, keys, credit cards and driver's license. Tools that had been in the victim's vehicle at the time it was stolen were found in the house's garage.
> Upon being questioned by police, Defendant initially denied any involvement in the armed robbery and theft. Ultimately, Defendant acknowledged that he was there at the victim's house and that he knew a robbery was going to occur and he was going to get a couple hundred dollars for his involvement in the robbery. However, Defendant continued to deny that he was the one who confronted the victim, contending that he stayed in the vicinity of the other vehicle while the robbery was going on.

Id., Exh. LL at 2.

The trial court rejected all of the grounds for relief asserted by Petitioner in his pro per petition for Rule 32 relief, finding the alleged newly discovered evidence did not constitute newly discovered evidence pursuant to Rule 32.1(e) and, therefore, that the claim was procedurally barred. The trial court found that, even if the evidence qualified

under the rule, the claim was meritless. The court also concluded each allegation of ineffective assistance of counsel was meritless. The court further determined Petitioner's claim regarding a "faulty" police investigation was not cognizable in a Rule 32 proceeding, and even if it were, it was without merit in light of the "overwhelming evidence of guilt in th[e] case." Id., Exh. LL at 3-7.

Petitioner filed a petition for review of this decision, which the Arizona Court of Appeals denied on August 8, 2013. Id., Exh. MM.

On August 13, 2013, Petitioner filed an untimely second Rule 32 petition, asserting the trial court erred by admitting other act evidence, that Petitioner had admitted to his prior historical felony convictions without a proper plea colloquy, that Petitioner's inability to understand English required reversal of his convictions, that his convictions must be reversed based on Blakley error; and that there was insufficient evidence to sustain his convictions. Id., Exh. NN. On August 19, 2013, the trial court dismissed the Rule 32 petition for failure to state a clam for which relief could be granted in an untimely Rule 32 proceeding. Id., Exh. OO.

In his federal habeas petition Petitioner asserts the trial court failed to sua sponte conduct a voluntariness hearing and that he was denied his right to the effective assistance of trial counsel. Petitioner also alleges that the police investigation resulting in his convictions was unconstitutionally defective. Respondents allow that the petition is timely and that Petitioner exhausted his federal habeas claims in the state courts.

**III Analysis**

**A. Standard of review of exhausted claims**

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law or the state court decision was an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d); Carey v. Musladin, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque, 555 F.3d 834, 838 (9th Cir. 2009). "Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was

- 5 -

'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Lafler v. Cooper, 132 S. Ct. 1376, 1390 (2012), quoting 28 U.S.C. § 2254(d)(1).  The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." Murray v. Schriro  746 F.3d at 441, quoting Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

> A state court applies a clearly established standard unreasonably only if no "reasonable interpretation of the controlling [Supreme Court] standard" can "support [the state court's] legal ruling." Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, [] (2007). So, when evaluating the reasonableness of a state court's application of a general standard, we must defer to any "principled reason for the state court to distinguish between the case before it and Supreme Court precedent." Murdoch v. Castro, 609 F.3d 983, 992 (9th Cir. 2010) (en banc). Moreover, § 2254(d)(1), the Supreme Court recently explained,
>> does not require state courts to extend [a Supreme Court] precedent or license federal courts to treat the failure to do so as error. Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."
>
> White, 134 S.Ct. at 1706 (internal citations omitted) (quoting Yarborough, 541 U.S. at 666, 124 S.Ct. 2140).

Arrendondo, 763 F.3d at 1133-34.

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." Harrington v. Richter, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S.Ct., at 786. We will not lightly

> conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. [] 131 S.Ct., at 786 (internal quotation marks omitted).

Burt v. Titlow, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in *United States Supreme Court opinions*, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result.  See, e.g., Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Soto v. Ryan, 760 F.3d 947, 957 (9th Cir. 2014); Runningeagle v. Ryan, 686 F.3d 758, 785 (9th Cir. 2012), cert. denied, 133 S. Ct. 2766 (2013).

> The "only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, [] (2003). If Supreme Court "cases give no clear answer to the question presented, ... it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126, 128 S.Ct. 743, [] (2008) (internal quotation marks omitted). In other words, "'[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].'" Richter, 131 S.Ct. at 786 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, [] (2009)).

McKinney v. Ryan, 730 F.3d 903, 909 (9th Cir. 2013).

> To satisfy the "unreasonable application" portion of the first prong, the petitioner must demonstrate that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360 (2002). "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law.'" Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002) (quoting Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000)...[]

Davis v. Woodford, 384 F.3d 628, 637-38 (9th Cir. 2004). See also Woods, 764 F.3d at 1121.

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. See McNeal v. Adams, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. See, e.g., Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010); Runningeagle, 686 F.3d at 785. An unreasonable application of law is different from an incorrect one. See Renico, 130 S. Ct. at 1862; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." Adamson v. Cathel, 633 F.3d 248, 255–56 (3d Cir. 2011). See also Howard v. Clark, 608 F.3d 563, 567–68 (9th Cir. 2010).

Pursuant to section 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Burt, 134 S.Ct. at 15 (internal quotation marks and citation omitted), quoted by Clark v. Arnold, 769 F.3d 711, 724-25 (9th Cir. 2014). Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller–El v. Dretke, 545 U.S. 231, 240–41, 125 S. Ct. 2317, 2325 (2005); Miller–El v. Cockrell, 537 U.S. 322,

340, 123 S. Ct. 1029, 1041 (2003); Runningeagle, 686 F.3d at 763 n.1; Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson, 504 F.3d at 881; Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304–05 (1982). Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). See also Murray v. Schriro, 745 F.3d at 998.

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See Lafler, 132 S. Ct. 1389-90; Panetti v. Quarterman, 551 U.S. 930, 953–54, 127 S. Ct. 2842, 2858–59 (2007); Amado v. Gonzalez, 758 F.3d 1119, 1131 (9th Cir. 2014); Runningeagle, 686 F.3d at 785-86; Greenway v. Schriro, 653 F.3d 790, 805–06 (9th Cir. 2011); Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008).

**B. Petitioner's claims for relief**

**1. Petitioner contends that the trial court should have, sua sponte, held a voluntariness hearing before admitting Petitioner's post-arrest statements to police as evidence at his trial.**

The state appellate court rejected this claim, finding, *inter alia*:

We find no error, much less fundamental error, here. First, there is no requirement that the trial court must sua sponte determine that a defendant's statements were voluntary before they can be admitted. The defendant must raise any issue of voluntariness. State v. Alvarado, 591 P.2d 973, 975 (1979). Once raised, the court has to address the issue pursuant to A.R.S. § 3988(A) (2010). Absent a request, the United States Constitution does not require the trial court to conduct a voluntariness hearing.

> Wainright v. Sykes, 433 U.S. 72, 86 (1977); Alvardo, 591 P.2d at 975.
>
> \*\*\*
>
> Moreover, Pina-Aguirre alleges his statements were involuntary because he was wet and cold during interrogation. Specifically, he testified that a police officer pushed him into a backyard swimming pool during the chase, even though the backyard where he was captured "was strictly dirt." He also testified that the air conditioner in the police station was on during the interrogation. Even assuming, arguendo, that he was cold and wet, there was no evidence that shows his will was overborne and his statements were involuntary. See State v. Spears, 908 P.2d 1065, 1071 (1996) (quoting State v. Arnett, 579 P.2d 542, 547 (1978...Moreover, there was no evidence of coercion during the interrogation. In State v. Smith, our supreme court held that coercive police activity is a necessary predicate before a trial court can find a confession was not voluntary. 974 P.2d 431, ¶ 14 (1999) (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)). Here, Pina-Aguirre was read the Miranda warnings and agreed to answer questions. No threats or promises were made during the interrogation. See State v. Boggs, 185 P.3d 111, ¶ 44 (2008) ... The detective testified that Pina-Aguirre never complained to him about his physical condition. In fact, Pina-Aguirre testified that he was not forced to make statements during the interrogation. Consequently, there was no voluntariness issue.

Answer, Exh. BB at 3-4.

The Arizona state court's conclusion was not clearly contrary to nor an unreasonable application of federal law. As found by the appellate court, a trial court is not obliged to sua sponte order a hearing to determine whether a confession was given voluntarily. See Wainwright v. Sykes, 433 U.S. 72, 86, 97 S.Ct. 2497, 2506 (1977)(" the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession"); Cunningham v. City of Wenatchee, 345 F.3d 802, 810 -11 (9th Cir. 2003)[1]. Additionally, the state court's conclusion that Petitioner's

---

[1] Other cases finding coercion have been far more outrageous. See, e.g., Mincey v. Arizona, 437 U.S. 385, 398–99, 98 S.Ct. 2408, [] (1978) (finding statement obtained from a defendant who was in the hospital, in near coma condition, and in great pain, while fastened to tubes, needles, and a breathing apparatus, could not have been voluntary); Haynes, 373 U.S. at 511–12, 83 S.Ct. 1336 (1963) (invalidating confession where suspect was held for over five days and never advised of his rights); Ashcraft v. Tennessee, 322 U.S. 143, 149–54, 64 S.Ct. 921, [] (1944) (invalidating confession because police questioned suspect for thirty-six

will was not overborne by any police conduct or coercion was not clearly contrary to nor an unreasonable application of federal law. See Colorado v. Connelly, 479 U.S. 157, 163-67, 107 S.Ct. 515, 520-22 (1986).

**2. Petitioner argues that he was denied his right to the effective assistance of counsel.**

Petitioner maintains that his counsel was ineffective because counsel failed to request a voluntariness hearing, because counsel failed to challenge the victim's identification of Petitioner, and because counsel failed to impeach Detective Salgado with an interview transcript. The state court denied these claims in Petitioner's first Rule 32 action. The state court's decision was neither contrary to nor an unreasonable application of federal law.

To state a claim for ineffective assistance of counsel, a habeas petitioner must show both that his attorney's performance was deficient and that the deficiency prejudiced the outcome of his criminal proceedings. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance. See id., 466 U.S. at 687, 104 S. Ct. at 2064. Counsel's performance will be held constitutionally deficient only if the habeas petitioner proves counsel's actions "fell below an objective standard of reasonableness," as measured by "prevailing professional norms." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064-65. See also Cheney v. Washington, 614 F.3d 987, 994–95 (9th Cir. 2010).

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

---

hours straight); Henry v. Kernan, 197 F.3d 1021, 1028 (9th Cir.1 999) (finding confession was involuntary because detectives admittedly continued the interrogation after the suspect clearly invoked his Miranda rights)...

Premo v. Moore, 131 S. Ct. 733, 739 (2011) (internal citations and quotations omitted), citing Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 788 (2011).

To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. See also, e.g., Cheney, 614 F.3d at 994. To succeed on an assertion his counsel's performance was deficient because counsel failed to raise a particular argument, the petitioner must establish the argument was likely to be successful, thereby establishing that he was prejudiced by his counsel's omission. See Tanner v. McDaniel, 493 F.3d 1135, 1144 (9th Cir. 2007); Weaver v. Palmateer, 455 F.3d 958, 970 (9th Cir. 2006). Accordingly, counsel's performance is not deficient nor prejudicial when counsel "fails" to raise an argument that counsel reasonably believes would be futile. See Premo, 131 S. Ct. at 741; Harrington, 131 S. Ct. at 788.

Additionally, it is Petitioner's burden to establish both that his counsel's performance was deficient and that he was prejudiced thereby. See, e.g., Wong v. Belmontes, 558 U.S. 15, 16-17, 130 S. Ct. 383, 384-85 (2009). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 555 U.S. 356, 371-72, 130 S. Ct. 1473, 1485 (2010), quoted in Harrington, 131 S. Ct. at 788.

> Counsel is constitutionally deficient if the representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88, 104 S.Ct. 2052 (internal quotation marks omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and we must guard against the temptation "to second-guess counsel's assistance after conviction or adverse sentence." Id. at 689, 104 S.Ct. 2052. Instead, we must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.; see also Harrington v. Richter, [] 131 S.Ct. 770, 789, [] (2011). Because of the difficulties inherent in fairly evaluating counsel's performance, courts must

> "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. This presumption of reasonableness means that not only do we "give the attorneys the benefit of the doubt," we must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, [] 131 S.Ct. 1388, 1407, [] (2011) (internal quotation marks and alterations omitted).
> To establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Under this standard, we ask "whether it is 'reasonably likely' the result would have been different." Harrington, 131 S.Ct. at 792 (quoting Strickland, 466 U.S. at 696, 104 S.Ct. 2052). That is, *only when "[t]he likelihood of a different result [is] substantial, not just conceivable*," id., has the defendant met Strickland's demand that defense errors were "so serious as to deprive the defendant of a fair trial," id. at 787–88 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).
> Under AEDPA, we do not apply the Strickland standard de novo. Rather, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. *"[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."* Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, [] (2009). *Deference to a state court's determination that counsel's performance was not deficient requires us to ask "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."* Harrington, *131 S.Ct. at 788. Deference to a state court's conclusion that any deficiency did not result in prejudice requires us to ask whether such a determination by the state court "would be unreasonable."* Premo v. Moore, [] 131 S.Ct. 733, 744, [] (2011); see also Harrington, 131 S.Ct. at 792 (holding that "[i]t would not have been unreasonable" for the state court to conclude that the petitioner's evidence of prejudice did not make it "reasonably likely" that the result would have been different).

Gulbrandson, 738 F.3d at 988-89 (emphasis added).

In denying Petitioner's ineffective assistance of counsel claims, the state court found that counsel's alleged "failure" to challenge the voluntariness of Petitioner's statements because Petitioner was wet and cold was "clearly" not deficient performance because such a motion was unlikely to succeed. The trial court further found that

- 13 -

although the method of identification was unduly suggestive, the victim's identification of Petitioner as the perpetrator ("100%" within one hour of the crime) was reliable and, accordingly, that any challenge to the identification would would have been futile. Accordingly, the trial court determined, counsel's alleged "failure to challenge—in no way" prejudiced Petitioner. With regard to Petitioner's allegation that counsel did not visit Petitioner prior to trial and that counsel was unprepared, the trial court found that, other than the failure to impeach Detective Salgado, counsel was prepared.

The trial court did find that counsel's failure to impeach Detective Salgado's rendition of the details of the interview with the transcript of the interview was deficient performance. However, the trial court concluded, because of the "overwhelming" evidence of Petitioner's guilt presented at trial, the deficient performance was not prejudicial.

The trial court delineated the evidence of guilt:

> As noted above, at trial the victim identified Defendant with certainty as her assailant. Defendant ultimately admitted to the police that although he did not confront the victim, he was there, knew that a robbery was going to occur, agreed to assist, was to be paid money for his assistance, and gave a gun to one of his accomplices. The victim's car was found outside the house from which the Defendant ran. The victim's property was found inside that house. A gun was found inside the house next to a black leather jacket (according to the victim, a gun was pointed at her by the Defendant during the robbery and the Defendant was wearing a black leather jacket). When apprehended, Defendant had a speed loader in his pocket that was the same caliber as the weapon found in the house by the black leather jacket. In light of the overwhelming evidence of Defendant's guilt, the Court is of the opinion even if defense counsel had impeached Detective Salgado, the result of the proceeding would have been the same. Thus, Defendant was not prejudiced by counsel's deficient performance.

Answer, Exh. LL at 6.

The state court's determination that Petitioner's counsel's performance was not unconstitutionally ineffective, i.e., that the only instance of deficient performance was not prejudicial and that the other allegations involved counsel's alleged "failure" to raise meritless arguments, was not clearly contrary to nor an unreasonable application of

federal law.  See Harrington, 131 S. Ct. at 732; Walker v. Martel, 709 F.3d 925, 943 (9th Cir. 2013); Douglas v. Woodford, 316 F.3d 1079, 1087 (9th Cir. 2003); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994);  Morrison v. Estelle, 981 F.2d 425, 429 (9th Cir.1992) (finding that a claim of ineffective assistance of appellate counsel on the ground that counsel failed to argue inadequate notice of the charge

**3. Petitioner also maintains that the police conducted a "faulty investigation" by failing to retrieve fingerprints and DNA evidence.**

The trial court dismissed this claim as follows:

> The final argument Defendant makes in his Petition is that the investigation was faulty because the police did not dust for fingerprints or conduct any DNA analysis. These facts, however, were pointed out to the jury during defense counsel's examination of the witnesses and during his closing argument. The jury nevertheless found Defendant guilty on all three charges.
> In this Court's opinion, this is not a claim that is properly raised under Rule 32.1. However, even if it was, it does not warrant Rule 32.1 relief. Quite simply, the police's failure to dust for fingerprints and/or conduct DNA analysis is no way deprived Defendant of a fair trial. Moreover, in light of the overwhelming evidence of guilt in this case, and as evidenced by the jury's verdicts, Defendant simply cannot demonstrate by clear and convincing evidence that no reasonable fact finder would have found Defendant guilty beyond a reasonable doubt without such evidence.

Answer, Exh. LL at 7.

The state court's decision that the police or prosecution's "failure" to conduct DNA analysis or to acquire fingerprints did not violate Petitioner's right to due process of law or a fair trial was not clearly contrary to nor an unreasonable application of federal law.  Under certain circumstances, the state's failure to collect or preserve potentially exculpatory evidence constitutes a due process violation. See Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337  (1988); Villafuerte v. Stewart, 111 F.3d 616, 625–26 (9th Cir.1997).

However, the duty to preserve evidence is limited to material evidence, i.e., evidence whose exculpatory value was apparent before its destruction and that is of such nature that the defendant cannot obtain comparable evidence from other sources.

California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534 (1984). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58, 109 S.Ct. at 337. See also Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir. 1997). Absent a showing of bad faith on the part of the police, "failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58, 109 S.Ct. at 337. The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation. See Phillips v. Woodford, 267 F.3d 966, 987 (9th Cir. 2001).

Because the state court's opinion was not clearly contrary to nor an unreasonable application of federal law, see Grisby, 130 F.3d at 371, Petitioner is not entitled to relief on this claim.

### III Conclusion

Petitioner properly exhausted his federal habeas claims by presenting them to the state courts. The state court's last reasoned decision denying the claims was not clearly contrary to nor an unreasonable application of federal law.

**IT IS THEREFORE RECOMMENDED that** Mr. Pino-Aguirre's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17)

pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna–Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 15th day of December, 2014.

_____
Mark E. Aspey
United States Magistrate Judge